# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

SCOTT D. CREECH,

                Plaintiff,      :      Case No. 2:19-cv-104

                                     District Judge James L. Graham
-  vs  -                              Magistrate Judge Michael R. Merz

OHIO DEPARTMENT OF REHABILITATION
 AND CORRECTIONS,

                Defendant.      :

## REPORT AND RECOMMENDATIONS

This action under Title II of the Americans with Disabilities Act was brought *pro se* by Plaintiff Scott Creech to seek damages and declaratory relief related to the ODRC's denying him the use of a cane from August 2016 until September 2019. The case is before the Court on cross-motions for summary judgment. After the close of discovery, Plaintiff filed for summary judgment on August 12, 2020 (ECF No. 65). Defendant opposed Plaintiff's Motion (ECF No. 73) and moved for summary judgment on its own behalf (ECF No. 74). The parties' additional filings on the summary judgment motions are at ECF No. 80 and 81.

The Magistrate Judge reference in this case was recently transferred to the undersigned to help balance the Magistrate Judge workload in the District. Final decision of the case remains with District Judge Graham.

1

**Summary Judgment Standard**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970). Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) (emphasis in original). Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed. R. Civ. P. 50). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate. *Id*. The opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586

(1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249-50 (citations omitted). "The mere possibility of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F. 2d 577, 582 (6th Cir. 1992)(quoting *Gregg v. Allen-Bradley Co.,* 801 F. 2d 859, 863 (6th Cir. 1986). Therefore a court must make a preliminary assessment of the evidence, in order to decide whether the plaintiff's evidence concerns a material issue and is more than *de minimis*.  *Hartsel v. Keys*, 87 F. 3d 795 (6th Cir. 1996).  "On summary judgment," moreover, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion."  *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962). Thus, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249.

> The moving party
>
>> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex,* 477 U.S. at 323;  see also, *Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (citation omitted).  If the moving party meets this burden, the nonmoving party must go beyond the pleadings to show that there is a genuine issue for trial.  *Matsushita*, 475 U.S. at 587; *Martin v. Ohio Turnpike Comm'n*., 968 F. 2d 606 (6th Cir. 1992).

In ruling on a motion for summary judgment (in other words, determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."

3

*Interroyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989). Thus, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the verified pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

The facts set forth in this Report are admitted or established by evidence competent under Fed. R. Civ. P. 56(c) and not controverted by opposing competent evidence.

Plaintiff's Motion for Summary Judgment is supported by excerpts from Plaintiff's medical records produced to him in discovery by Defendant (ECF No. 65, PageID 315-36), a pamphlet entitled "Traumatic Brain Injury: Helping You Understand and Cope (*Id.* at PageID 337-93)[1], Defendant's Responses to Plaintiff's Requests for Admission (*Id.* at PageID 395-400), his own Declaration (*Id.* at PageID 401-03), and the Declarations of fellow inmates Steven Angel (*Id.* at PageID 404-06), Edward York (*Id.* at PageID 407-08), and Ellery Gethers (*Id.* at PageID 409).

Defendant's Cross-Motion is supported by affidavits of Sonya Peppers (ECF No. 74-1) and Gary Artrip (ECF No. 74-2), ODRC Guidelines for Medical Restrictions (ECF No. 74-3), documents from Creech's grievance process (ECF No. 74-4, PageID 930-36), excerpts from Plaintiff's medical records while incarcerated (ECF No. 74-5, PageID 937-66), and a transcript of Creech's November 8, 2019, deposition taken in this case (ECF No. 66-1, PageID 413, *et seq.*).

---

[1] The pamphlet does not show an author, but Creech has hand-lettered on the first page that it was given to him and his immediate family and caretakers by the staff of Grant Medical Center in August 1999 (PageID 337).

4

**Undisputed Facts**

Plaintiff Scott Creech is an inmate at the Chillicothe, Ohio, Correctional Institution ("CCI"), a prison operated by Defendant Ohio Department of Rehabilitation and Corrections ("ODRC"). ODRC is an arm of the State of Ohio for purposes of the Eleventh Amendment.

Creech was sixty-three year old at the time of his deposition (Depo. Tr. , ECF No. 66-1, PageID 421). He grew up in Lucasville, Ohio, and enlisted in the United States Army a year after quitting high school. *Id.* at PageID 423. After six years he received a bad conduct discharge for drug offenses. *Id.* at PageID 424. Creech has three felony convictions for drug trafficking offenses. *Id.* at PageID 439. In June 1988 he was involved in a motorcycle crash. *Id.* at PageID 447. He was on Social Security disability payments from 1988, apparently as a result of the crash. *Id.* at PageID 461. After another 1999 motorcycle accident, he was flown by helicopter from Scioto County to Grant Medical Center in Columbus and was hospitalized for thirty-one days. *Id.* at PageID 465.

Creech had with him at the deposition the cane he had been reissued at CCI in September 2019. *Id.* at PageID 481. He was using a cane at London Correctional during a prior prison term in 2004-05. *Id.* at PageID 483. Prior to that prison term, he would always keep it with him on the street. *Id.* at PageID 485. The medical provider who prescribed his use of a cane was Dr. Hoxie in Waverly who also prescribed him painkillers. *Id.* at PageID 489-91. He stopped seeing Dr. Hoxie around 2001 when the doctor got into trouble.[2] *Id.* at PageID 493. Some other doctor reissued him a cane in 2006 which he used periodically and kept in his car. *Id.* at PageID 496.

---

[2] Doctor Hoxie's license to practice medicine was permanently revoked in 2003. See *Hoxie v. Ohio State Med. Bd.*, 2006-Ohio-646.

The Amended Complaint alleges at ¶ 5 that an orthopedic surgeon at the prison, whose name Creech cannot remember, told him to keep using his cane, although he did not make a written order to that effect. *Id.* at PageID 498-99. Nurse Practitioner Artrip took the cane in August 2016. *Id.* at PageID 502. Creech claims he did not file this lawsuit until January 2019 because he was involved in many other legal proceedings. *Id.* at PageID 502.

To improve his health, Creech avers he signed an agreement with the Warden that he would walk two miles every day. *Id.* at PageID 507[3], but with the cane he was able to walk three, four, or five miles at a time. *Id.* In nice weather in 2018 and 2019, even without the cane, he would walk two or three times a week. *Id.* at PageID 512. Since the cane was restored, he is now back to two miles a day. *Id.* at PageID 515. He understands why canes are a security risk. *Id.* at PageID 515-16. While he did not have the cane, Creech could walk for an hour and not be in extreme pain, but standing still caused him pain. *Id.* at PageID 522. He is not aware of any new diagnoses he received as a result of not having the cane from 2016 until 2019. *Id.* Current pain in his lower back and hip and down one leg a doctor attributed to arthritis. *Id.* at PageID 527.

The damages Creech claims from deprivation of the cane are "diminished health," to wit, "being out of shape," and continuous right knee pain. *Id.* at PageID 530-31. He also put on weight, somewhere between ten and twenty pounds. *Id.* at PageID 533-34.

Creech has not filed an Americans with Disabilities complaint with any federal agency or received a right to sue letter. *Id.* at PageID 558-59. Getting to the law library was harder without the cane. *Id.* at PageID 578. His medical restrictions of using a lower bunk and the cane were reviewed by prison medical personnel on an annual basis from the time he entered CCI. *Id.* at PageID 597. Creech admits Artrip took the cane based on Artrip's medical judgment. *Id.* at

---

[3] No copy of that agreement has been made part of the record.

6

PageID 620.  He had raised the issue of the cane with all the doctors he saw between 2016 and 2019 and none would override Artrip until Peppers did. *Id.* at PageID 635.  In a medical request on April 23, 2019, Creech requested a knee brace, back brace, and the cane, even though he had not requested the cane in intervening written medical requests. *Id.* at PageID 650-51.  Creech never filed an accommodations request under ADA with the ADA coordinator for ODRC. *Id.* at PageID 672.

ODRC policy on medical restrictions reads: "**Medical Restriction:** A medical accommodation written by a physician or other advanced health care provider, used to address a serious medical need.  Medical restriction orders are temporary and must be regularly reviewed and rewritten."  (ECF No. 74-3, PageID 926-29).  Creech's medical restrictions for use of a lower bunk and a cane were reviewed at CCI at least seven times prior to August 23, 2016 (ECF No. 74-5).

Gary Artrip is a Certified Nurse Practitioner on the staff at CCI where Creech is incarcerated (Artrip Affidavit, ECF No. 74-2, PageID 924-25).  During a physical examination on August 23, 2016, he noted that Plaintiff's "cane [was] not medically indicated based upon mobility." *Id.* Artrip was an "advanced health care provider" as defined by ODRC policy—capable of making decisions regarding medical restrictions. Artrip based his decision on his medical expertise after "observing Inmate Creech during a clinic evaluation, personal observations of him walking in the yard and through the hallways, review of his medical file, and the institutional security concerns regarding the use of a cane." (*Id.*)

On April 9, 2019, Plaintiff was seen at the CCI clinic by CNP Nathan Ross. (Exhibit E). During this encounter, CNP Ross noted that Plaintiff "ha[d] no complaints at this time." (*Id.*).

However, two weeks later on April 23, 2019, Plaintiff filed a Health Services Request stating "I need a back brace, knee brace, and cane. My medical condition is rapidly getting worse." (*Id*. at p.17). On May 1, 2019, Plaintiff was seen at the prison clinic by CCI's Chief Medical Officer, Sonya Peppers, M.D. (Peppers Affidavit, ECF No. 74-1). During this encounter Creech stated that he "had a cane for several years but it was recently taken from him... states that at times his knee will give out on him and the cane offers support… [he] was previously walking 4 miles/per day with the assistance of his cane." *Id.* In addition, during this encounter Plaintiff "denie[d] any recent falls or tripping" and "admit[ted] that he does not use the cane, he just has it just in case." *Id.*

Dr. Peppers noted in the May 1, 2019, encounter that she would "review his old records to determine need for a cane."  Dr. Peppers issued Plaintiff a cane on September 23, 2019, to assist with his ambulation. *Id.*  This issuance of the cane was "based on a [her] review of his old medical records, Inmate Creech's complaints of a new joint complaint, a new physical exam, and [her] medical opinion." *Id*. At no time did Dr. Peppers "opine that Inmate Creech had a qualifying disability under the Americans with Disabilities Act (ADA)." (*Id.* at ¶ 12).

**Positions of the Parties**

Plaintiff argues that he is a qualified individual under the Americans with Disabilities Act because he was found to be totally disabled from employment by the Social Security Administration and had been receiving disability payments until they were suspended upon his incarceration in 2008.  Plaintiff has not submitted the determination of the Social Security Administration or provided documentation of the basis on which they found him to be totally disabled.  The attachments to the Complaint to which he refers in his Reply Memorandum (ECF

8

No. 80) do not show any such basis, but merely document the conclusion of the Social Security Administration.

Creech does not identify any program offered by the prison from which he was excluded because of his disability. Rather, he asserts that CCI allows prisoners to exercise by walking in the yard and that taking his cane away from 2016 to 2019 made it more painful for him to do so and increased the risk he would fall while walking. The prison of course also provides free meals to prisoners. While he was not excluded from meals while he did not have his cane, it was more painful for him to stand in line to wait for meals. Finally, it was harder to walk to the law library or to get a higher seat in the bleachers to watch inmate ballgames.

Defendant argues Plaintiff has not established that he is a qualified individual under the ADA and that his claim to that status based on the Social Security determination is purely conclusory. Defendant also claims it is immune from damages liability under the Eleventh Amendment to the United States Constitution, arguing at length that to the extent Title II of the ADA purports to reach prison actions, it is an unconstitutional exercise of Congressional power under Section 5 of the Fourteenth Amendment. ODRC asserts Creech's claim for injunctive relief is moot and therefore this Court has no jurisdiction to consider it. Finally, Defendant argues Plaintiff's claim is barred by the applicable two-year statute of limitations.

Despite having elicited Creech's admission at his deposition that he never filed an administrative ADA complaint and having pleaded lack of exhaustion as an affirmative defense (Answer, ECF No. 11, PageID 80, ¶ 14), ODRC does not seek summary judgment on that basis.

## Analysis

Plaintiff brings this action solely[4] pursuant to Title II of the Americans with Disabilities Act ("ADA"). Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Ability Ctr. of Greater Toledo v. City of Sandusky,* 385 F.3d 901, 903-04 (6th Cir. 2004), quoting § 202, 42 U.S.C. § 12132. "To establish a *prima facie* case of intentional discrimination under Title II of the ADA, a plaintiff must show that: (1) she has a disability; (2) she is otherwise qualified; and (3) she was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of her disability." *Anderson v. City of Blue Ash*, 798 F.3d 338, 356 (6th Cir. 2015)). Title II is enforceable by a private cause of action. *Barnes v. Gorman*, 536 U.S. 181, 184-85 (2002); s*ee also Ability Ctr.*385 F.3d at 907 ("Title II does more than prohibit public entities from intentionally discriminating against disabled individuals. It also requires that public entities make reasonable accommodations for disabled individuals so as not to deprive them of meaningful access to the benefits of the services such entities provide."). "In the typical Title II case, the plaintiff alleges she was denied reasonable accommodations in violation of the Act." *Sjostrand v. Ohio State Univ.*, 750 F.3d 596, 599 (6th Cir. 2014).

While Plaintiff has used the word "discrimination" frequently in his filings, he has presented no evidence at all of intentional discrimination against him. That is, he has not shown ODRC or CCI has excluded him from any program because he is disabled. Rather this case must

---

[4] Although Plaintiff mentions denial of "civil rights" several times in his filings, he has not made any claim under 42 U.S.C. § 1983 for deprivation of constitutional rights.

be analyzed as claiming that ODRC has refused to provide him with a reasonable accommodation of his disability, to wit, the use of a cane as a mobility aid from August 2016 to September 2019.

Plaintiff relies on the disability determination of the Social Security Administration to establish that he suffers from a qualifying disability. As Defendant has noted, that determination is insufficient to establish disability under the ADA (ECF No. 74, PageID 899, citing *Thornton v. Fed. Express Corp.*, 530 F.3d 451, 455 (6th Cir. 2008); *McNeill v. Wayne County*, 300 F. App'x 358, 362 (6th Cir. 2008)).

Nevertheless, Defendant has effectively conceded that Creech needed the cane for the period from his admission to CCI in 2008 until August 2016 and then again since September 2019. Defendant does not claim that providing the cane for those periods was gratuitous on its part and such a claim would not be credible since a cane is a security risk in a prison.

To qualify as a disability under the ADA, the disabling condition must interfere with a major life function. It can hardly be doubted that walking and eating qualify as major life functions.

**Statute of Limitations**

Defendant asserts Creech's claim is barred by the statute of limitations.

Because there is no Congressionally-enacted statute of limitations for ADA claims, the federal courts "borrow" the most parallel limitations period from the State in which the District Court sits. *Hardin v. Straub,* 490 U.S. 536 (1989). Defendant asserts and Creech does not dispute that the relevant period is to be borrowed from the two-year Ohio general personal injury statute. Ohio Revised Code § 2305.10, *Nadra v. Mbah*, 119 Ohio St. 3d 305 (2008); *Banks v. City of*

*Whitehall*, 344 F.3d 550, 551 (6th Cir. 2003), *citing Browning v. Pendleton,* 869 F.2d 989 (6th Cir. 1989)(*en banc*). In Ohio, the statute of limitations is two years and runs from "when the plaintiff knows or has reason to know of the injury which is the basis" of the claim. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 856 (6th Cir. 2003).

Creech knew of the deprivation of his cane in August, 2016, and did not bring suit until January 2019, more than two years later. However, Creech correctly invokes the doctrine of continuing violation. That is to say, the cane was taken away in August 2016 and was not restored until September 2019, despite Creech's having filed grievances over the matter in late 2016. Although Creech is barred from recovery of damages for the period from August 2016 until January 11, 2017, he is not barred for the succeeding period of deprivation, January 11, 2017, to January 11, 2019. *Eidson v. State Dep't of Children's Servs.*, 510 F.3d 631 (6th Cir. 2007). ODRC's statute of limitations defense should be overruled.

**Eleventh Amendment Immunity**

ODRC asserts it is immune from damages liability by virtue of the Eleventh Amendment. The Eleventh Amendment to the United States Constitution provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State.

It was adopted to overrule the very unpopular decision of the Supreme Court in *Chisholm v. Georgia*, 2 Dall. 419 (1793). It has been construed to bar suits against a State by its own citizens. *Papasan v. Allain,* 478 U.S. 265, 276 (1986); *Hans v. Louisiana*, 134 U.S. 1 (1890); *Edelman v.*

*Jordan*, 415 U.S. 651 (1974); *Florida Dep't. of State v. Treasure Salvors, Inc.*, 458 U.S. 670 (1982). The Amendment also bars actions against state agencies where the State is the real party in interest and the action seeks to recover money from the state treasury. *Estate of Ritter v. University of Michigan,* 851 F.2d 846, 848 (6th Cir. 1988); *Ford Motor Company v. Dep't. of Treasury of State of Indiana*, 323 U.S. 459 (1945); *Quern v. Jordan*, 440 U.S. 332 (1979). As noted above, there is no question that ODRC is an arm of the State of Ohio, charged with a core responsibility of modern government, the custody of persons committed to prison by courts of law.

Congress has the power to abrogate Eleventh Amendment state immunity when it acts to enforce the Fourteenth Amendment, using the power granted by § 5 of the Fourteenth. Congressional abrogation of state immunity under the Eleventh Amendment must be by unequivocal statement. *Green v. Mansour*, 474 U.S. 64 (1985); *Blatchford v. Native Village of Noatak,* 501 U.S. 775 (1991). It is undisputed that Congress has made an unequivocal statement of abrogation in the ADA.

"Although the ADEA does contain a clear statement of Congress' intent to abrogate states' immunity, the Sixth Circuit held that abrogation exceeded Congress' authority under Section 5 of the Fourteenth Amendment." *Coger v. Bd. of Regents of the State of Tenn.,* 209 F.3d 485 (6th Cir. 2000), relying on *Kimel v. Florida Bd. of Regents,* 528 U.S. 62 (2000). The Supreme Court initially held the ADA abrogation of sovereign immunity invalid. *Board of Trustees of University of Alabama v. Garrett,* 531 U.S. 356 (2001).

However, that holding was substantially modified by the unanimous decision of the Court in *United States v. Georgia*, 546 U.S. 151 (2006), where the Court held that Congressional abrogation of immunity in the ADA was effective insofar as it authorized private actions for conduct that actually violates the Fourteenth Amendment. In the prison context that would

typically be conduct that imposes cruel and unusual punishment in violation of the Eighth Amendment or conduct that violates the First Amendment, particularly access to the courts.

The Fourteenth Amendment has been held to "incorporate" almost all of the Bill of Rights. See *McDonald v. Chicago*, 561 U.S. 742 (2010), citing *Robinson v. California*, 370 U.S. 660 (1962), with respect to the Eighth Amendment. See also *Bounds v. Smith,* 430 U.S. 817 (1977), with respect to access to the courts.

Creech has not pleaded conduct by ODRC which infringes on rights protected by the Fourteenth Amendment. His principal claims are that deprivation of the cane interfered with his ability to exercise by walking as much as he had been able to when he had the cane and eating, by making it more painful for him to stand in line for CCI-provided meals. In an abstract sense walking and eating can be seen to be liberties which, in the era of expansive reading of "substantive" Due Process protections, might have been held by the Supreme Court to be constitutionally protected. See *Meyer v. Nebraska*, 262 U.S. 390 (1923), and *Pierce v. Society of Sisters,* 268 U.S. 510 (1925). But the Supreme Court has never reached that point with respect to eating or walking. Because those are major life functions the Supreme Court has not held to be protected by the Fourteenth Amendment, protecting those functions under Title II of the ADA is beyond Congressional authority conferred by § 5 of the Fourteenth Amendment.

Creech has also alleged that deprivation of the cane made it harder for him to get to the law library. While access to a prison law library is protected (*Bounds, supra*), Creech has provided no evidence of the extent of interference with law library access that occurred here. Creech had sufficient access to the law library to litigate his habeas corpus case in this Court (*Creech v. Warden*, Case No. 1:15-cv-193, presently on appeal to the Sixth Circuit in that court's case number 20-3935). The Constitution does not require that prisoner access to a law library be painless.

The Magistrate Judge therefore concludes that ODRC retains its Eleventh Amendment immunity for the ADA claims Creech makes here.

**The Merits**

Even if ODRC were not immune from damages under the ADA in this case, Creech's claim would be without merit.

This action is essentially a suit to recover damages for what Plaintiff claims is deprivation of a reasonable accommodation of his disability. To recover, Creech must prove that providing him with a cane was a reasonable accommodation of his disability from August 2016 through September 2019. He has not done so. He claims that he had an ongoing prescription from an orthopedic surgeon to use a cane. He has produced no evidence of such a prescription beyond his own declaration, despite having been given access to his medical records in discovery. Of course persons who are not in prison do not require a prescription from a physician to obtain a cane; they are ordinarily obtainable over the counter in any pharmacy, so the fact of Creech's use of a cane after his 1988 motorcycle accident does not prove the cane was physician-ordered.

Defendant has shown, and Plaintiff does not dispute, that ODRC requires regular review of medical restrictions. The justification is obvious: medical conditions change over time, improving or deteriorating. Particularly with respect to an object such as a cane, which Plaintiff admits can be and has been used as a weapon in prisons[5], review makes sense from a security perspective. But review of other medical restrictions also makes penological sense. Creech has

---

[5] There is no allegation, however, that Creech has ever misused his cane in that manner.

an ongoing restriction to a lower bunk. In the absence of a medical indication, such a restriction might be viewed by a cellmate as an unwarranted privilege and cause unrest.

In this particular case, Nurse Practitioner Artrip, authorized by regulation and by professional credentials, determined that Creech did not as of August 2016 need the cane and removed the restriction. As Creech himself admits, when he asked[6] other medical personnel between then and May 2019 to reverse Artrip's decision, they refused to do so. Creech offers no evidence at all that these decisions were not made in good faith and in the diligent exercise of medical professional judgment by these personnel. When Dr. Peppers did return the cane in September 2019, it was on the basis of her own medical judgment; nowhere in her Affidavit does she suggest that Nurse Practitioner Artrip's decision was wrong at the time he made it. Instead, based on old and new complaints and a new physical examination, she decided the cane was warranted.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge concludes there are no material issues of fact in this case and Defendant ODRC is entitled to judgment as a matter of law. It is therefore respectfully recommended that Plaintiff's Motion for Summary Judgment be denied and Defendant's Cross-Motion for Summary Judgment be granted. Judgment should be entered in favor of Defendant and against Plaintiff, dismissing this case with prejudice.

January 4, 2021.

s/ *Michael R. Merz*
United States Magistrate Judge

---

[6] Creech's deposition establishes that those requests, except during the grievance process, were not made in writing.

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.

## NOTICE REGARDING RECORD CITATIONS

The attention of all parties is called to S. D. Ohio Civ. R. 7.2(b)(5) which provides:

> (5) **Pinpoint Citations**. Except for Social Security cases, which must comply with S.D. Ohio Civ. R. 8.1(d), all filings in this Court that reference a prior filing must provide pinpoint citations to the PageID number in the prior filing being referenced, along with a brief title and the docket number (ECF No. ___ or Doc. No. ___) of the document referenced.

The Court's electronic filing system inserts in all filings hyperlinks to the place in the record which has been cited following this Rule.  However, as with most computer systems, the CM/ECF program cannot read pinpoint citations which do not follow the Rule precisely.  For example, the first pinpoint citation in ODRC's Reply reads "Plaintiff argues that he could not bring this action until "administrative remedies as (sic) are exhausted (sic)." (Doc. 80, PageId# 987)."  The correct citation would have been Doc. No. 80, PageID 987."  Because Defendant added the "#" symbol, the program failed to inset a hyperlink.  Use of this software is mandated by the Judicial Conference of the United States and cannot be locally modified.  **The parties are cautioned to comply precisely with S. D. Ohio Civ. R. 7.2(b)(5) in any further filings.**

17