SCANNED AT CCI and E-Mailed to USDC OHSD on 6/8, 2021 by CPlummill

No. of Pgs. 48

THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO

EASTERN DIVISION

SCOTT DAVID CREECH,

    Plaintiff,

v.

OHIO DEPARTMENT OF
REHABILITATION AND
CORRECTIONS, et, al.,

    Defendant.

Case No. 2:19-cv-00104

JUDGE JAMES L. GRAHAM

MAGISTRATE MICHAEL R. MERZ

## PLAINTIFF'S OBJECTIONS TO THE SUPPLEMENTAL REPORT AND RECOMMENDATIONS IN THIS CIVIL ACTION

Now comes the Plaintiff, Scott David Creech, without counsel in the above titled case to lodge his objections to the "Supplemental Report and Recommendation issued by the Magistrate Judge on the fifth (5) day of April 2021, pursuant to 28 U.S.C. 636(b)(1), and Fed. R. Civ. P. 72(b).

Respectfully Submitted,
Scott D. Creech,
C.C.I. # A599-782
P.O. Box 5500
Chillicothe, Ohio 45601

Plaintiff disagrees with the following factual findings in the Magistrate Judge's Report and Recommendations, and cites the record in support of the fact proffered herein:

1.) In Creech v. Ohio Dep't of Rehab. & Corr., 2021 U.S. dist. Lexis 66215 * 2-3; the magistrate judge averred that "plaintiff (hereinafter Creech) first objects that the report referes to the attached excerpts of medical records as having been produced to plaintiff by ORDC in discovery. In fact, he says, they were already in his possession. Hence, the difference is immaterial since defendant did not challenge the authenticity of the record.

2.) Objection: The primary reason for the first claim in the first objection to the report and recommendations, simply put, was to make this court aware that defendants did not comply with discovery request, even when ordered to do so by this honorable court. Therefore the authenticity of the record was not the issue in this argument.

1.) In Creech v. Ohio Dep't of Rehab. & Corr., 2021 U.S. Dist. Lexis 66215 * 3; the magistrate judge averred that Creech does not contend he was ever excluded completly from any prison services. Rather, he contends he needed the cane from August 2016 through September 2019 as a reasonable accommodation to his disability to give him meaningful access to services.

2.) Objection: By separatly identifying as requirements of public entities that they not deny qualified disabled individuals the benefits of public services and that they not discriminate against such individuals, 42 U.S.C.S. § 12132 demands more of public entities

than simply refraining from intentionally discriminating against disabled individuals. In stating that public entities shall not deny qualified disabled individuals the benefits of public services, § 202 (42 U.S.C.S. § 12132 of title II of the Americans with disabilities act, 42 U.S.C.S. §§ 12131-12165 necessarily requires entities to provide such individuals the means necessary to aquire access to these services.

3.) All that title II of the ADA requires, is that "no qualified individual with a disability shall by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subject to discrimination by such entity. Nowhere in the language of the ADA does it mention that a defendant must exclude a plaintiff altogether from some prison service. A person who happens to be partialy deaf-to a point where she/he cannot hear most of what is being said in a program-without auxiliary aids and/or services to assist her/him in the program or service provided, is that person denied benefits from this service or program?

4.) It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. Helling v. McKinney, 509 U.S. 25, 31, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993). For example, under the Eighth Amendment, prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). If these needs are not met. "Such failure may actually produce physical torture or lingering death." Estelle v. Gamble, 429 U.S. 97, 103, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). (quoting In re

Kemmler, 136 U.S. 436, 447, 10 S. Ct. 930, 34 L. Ed. 519 (1890). For this reason, "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment" and is actionable under § 1983, Estelle at 104 (internal citations omitted).

5.) There is no denying that Creech suffered unnecessary pain that could have been alleviated by simply reissuing the cane when it was arbitrarily taken without explanation at the time of its removal. Moreover, the complaint is clear that Creech was excluded comletely from the chow-hall, because he would have to stand in line to wait for his meal, which under that situation would have been impossible to do.

6.) A public entity shall make reasonable modifications, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity. 28 CFR § 35, 130(b)(7) (1998). Also see Olmstead v. L.C. by Zimring, 527 U.S. 581, 592, 119 S. Ct. 2176, 2183, 144 L. Ed. 2d 540 (1999). The ADA contains an "integration mandate," which requires that persons with disabilities receive services in the most integrated setting appropriate to their needs. Olmstead at 597, also see 28 CFR 35. 130(d).

7.) Creech simply asked for his mobility aid (i.e. cane) to assist him in his ability to walk. A mobility aid such as a cane is not an unreasonable request that would fundamentally alter the nature of the services, programs, or activities of ODRC. Hence, a cane is not at such a cost that it should be scrutinized or looked at as a

weapon - especially since there is no allegation or indication that Creech ever used the cane as a weapon. This objection should be sustained.

1.) In Creech v. Ohio Dep't of Rehab & Corr., 2021 U.S. Dist. lexis 662215 * 4, the Magistrate Judge averred that the core of Creech's claim is that he gets to define what a reasonable accommodation is, and not the prison personnel. That is because he needed the cane at all times since he was imprisoned, his judgment cannot be overruled by the prison medical personnel. Creech has not presented testimony from a single medical profesional that he needed the cane, as a reasonable accommodation to his disability between August 2016 and September 2019. The burden of providing the necessity of an accommodation is on the plaintiff. The burden of showing that a proposed accommodation is reasonable is also on the plaintiff.

2.) Objection: ODRC has its own policies that define what a reasonable accommodation is. ODRC Policy Number 64-DCM-02(C)(4) states that: No inmate shall be denied acess to any program assignment based soley upon his/her disability. However, any inmate having a disability must meet the same criteria for admittence to a program as any other inmate needing a reasonable accommodation to attend a program shall be provided that accommodation based upon his/her individual needs, so long as the accommodation does not adversely impact security. See. App. D 64-DCM-02

3.) In Appendix A, of ODRC's Policies, an inmate is regared as impaired if: (1) he or she has an impairment which does not limit a major life activity, but is treated as disabled by the department. Or, (2) there is no impairment, but the person is treated as

Pg 5

disabled by the department, under record of impairment, an individual has a record of impairment if: (1) He or she has a history of impairment. or, (2) A record of having been misclassified as having an impairment.

4.) In 2008, the ADA was considerably altered by the passage of the Americans with Disabilities Act Amendments Act (hereinafter "ADAAA"), in which Congress provided additional guidance to courts regarding the "disabled requirement of the ADA, Specifically, courts have noted that-with the passage of the ADAAA, the "substantiallyy limits" criterion of 42 U.S.C. § 12102(1), incorperated into the Rehabilitation Act via 29 U.S.C. § 705(20)(B), " is not meant to be a demanding standard." See, e.g. Taylor v. Specialty Rest. Corp., No. 2: 12-cv-442014 WL 4922942. * 4 (S.D. Ohio Sept. 30, 2014). Rather, the ADAAA provides:

> The primary purpose of the ADAAA is to make it easier for people with disabilities to obtain protection under the ADA, consistent with the Amendment Act's purpose of reinstating a broad scope of protection under the ADA. The definition of "disability" in this part shall be construed broadly in favor of expansive coverage to the maximum extent permitted by the terms of the ADA. The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability. The question of whether an individual meets the definition of disability under this part should not demand extensive analysis.

5.) On APril 23, 2019, creech filed a health service request stating that he needed a back brace, knee brace, cane due to his medical condition getting worse, which was directly attributed to the arbitrarty removal of his mobility aid. On May 1, 2019, Creech was seen at the prison clinic by CCI's Chief Medical Officer,

Pg 6

Sonya Peppers, M.D.. During the examination, Creech stated that he had the cane for several years but it was recently taken from him. Creech also stated that at times his knee will give out on him and the cane helped support this condition. Creech told Dr. Peppers that he was previously walking four (4) miles pe day with the assistance of his cane.

Dr. Peppers noted on May 1, 2019, that she would review his <u>old records</u> to determine the need for a cane. Dr. Peppers reissued creech's cane on September 23, 2019 to assist with ambulation. The issueance of the cane was based on her <u>review of his old records-</u> as well as complaints of a new joint complaint. This decision was based on a new physical exam, and her medical opinion. Therefore, the old records, at least in part, were the impetus behind Dr. Peppers decision to reissue the cane. Moreover, on June 22, 2020, Creech filed a "motion for expert medical opinion" which was denied because his discovery period had ended. If Creech had been granted a medical opinion, he could have proved that the new injuries were a direct result of N.P. Artrip's decision to remove the cane. This matter should be for a jury to decide. This court should sustain this objection.

1.) In Creech v. Ohio dep't of Rehab. & Corr., 2021 U.S. Dist. Lexis 66215 * 4, the Magistrate Judge averred that Creech admitted in his deposition that a cane in a prison facility creates a security risk. Under thoes circumstances and where he has no evidence from a medical professional that he needed the cane between August 2016 and September 2019, he has not presented a triable issue on the reasonableness of his proposed accommodation. His opinion of medical necessity cannot overcome that of nurse

practitioner Artrip to remove the cane and all the medical professionals who reviewed the case before 2019, who refused to overrule Artrip.

2.) Objection: Since there is no indication that Creech has used his cane as a weapon-this claim by the Magistrate Judge should not be a viable issue. Although there are no medical opinions that specifically state that Creech needed the cane between August 2016 and September 2019, there is a substantial indication that Creech suffered issues of pain and suffering which shows deliberate indifference to his medical needs amounting to cruel and unusual punishment in violation of the Eighth Amendment. This given the fact that N.P. Artrip knew of Creech's medical records and disregarded an excessive risk to his health and safety. Moreover, when Creech filed his grievance with ODRC's Chief Inspector, he was told by them that "the record indicates that you have no diagnosed mobility issue listed in your record that suggest your need for a cane."

3.) There are no records to indicate that the reason N.P. Artrip removed the cane, was because of safety concerns or that a cane poses a threat in prison-like what was mentioned in N.P. Artrip's answers to discovery. Thus, in this case, Creech has satisfied both the objective and subjective prongs of the Eighth and Fourteenth Amendment. Creech has identified a serious medical need, which is one that was diagnosed by many Physicians as mandating treatment, and one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.

4.) In Fact, during the discovery request on January 30, 2020, Creech requested the following from defendants: Any and all recordings, nots, memoranda reports or the like prepared by and/or

for any of the Ohio Department of Rehabilitation & Correction (ODRC) disciplinary decisions relating to nurse Gary Artrip, concerning this action and/or any other action determined to be detrimental to the welfare of inmates?

In response to that request, Creech was **report to case maneger, Ms.Thiss, SEE.App.C.,** who then called the Ohio Attorney General's Office, who stated that there were no complaints, actions, or grievances filed against N.P. Artrip. However, **Creech has found** other cases, which were either directly or indirectly connected to Artrip regarding medical decisions that he has made. These include: Kline v. Artrip, 2021 U.S. Dist. Lexis 48617 (S.D. Ohio, Mar. 16, 2021); Pierse v. Mohr, 2014 U.S. Dist. Lexis 137409 (S.D. Ohio, Sep. 29, 2014); Grove v. Ohio Dep't of Rehab & Corr., 2021 U.S. Dist. Lexis 16025 (S.D. Ohio, January 28, 2021); Lawson v. McQuate, 2012 U.S. Dist. Lexis 94100 (S.D. July 9, 2012); Phelps v. Ohio Dep't of Rehab & Corr., 2015 Ohio Misc. Lexis 104 (Ohio Ct. Cl., Aug 12, 2015), All of these inmates can or would testify that Chillicothe Correctional Institution has a "culture of care" that denies medical care to inmates as stated in the Lawson case. This more fully show that C.C.I. has a pervasive custom and policy of denying inmates their constitutional rights to medical care. See Johnson v. Karns, 398 f. 3d 868, 874 (6th Cir. 2005). (internal quotation marks and citations omitted). This objection should be sustained.

1.) In Creech v. Ohio. dep't of Rehab & corr., 20212 U.S. Dist. Lexis 66215 * 4, the Magistrate Judge averred that Creech admitted in his deposition that a cane in a prison facility creates a security risk. Under those circumstances and where he has no

Pg 9

evidence from a medical professional that he needed the cane between August 2016 and September 2019, he has not presented a triable issue on the reasonableness of his proposed accommodation. His opinion of medical necessity simply cannot overcome that of Nurse Practitioner Artrip to remove the cane and all the medical proffessionals who reviewed the case before 2019 who refuesed to overrule Artrip.

2.) Objection: The factual error relied upon by the Magistrate Judge, is that a cane may be taken soley on the basis "that a cane can be used as a weapon." ODRC has supplied no evidence that Creech has ever used his cane as a weapon-or that he had a violent record that would indicate he could use a cane as a weapon. C.C.I. has alot of elderly prisoners who walk safely to and fro the grounds of C.C.I. on a daily basis. Moreover, there were no new injuries associated with Creech's request to reissue his cane, as stated by defendants. Defendants admitted as much in their "Opposition t Summary Judgment and Cross-Motion for Summary Judgment." (Doc. 73 Page 5-6).

3.) Dr. Peppers stated clearly that she would review Creech's <u>old records</u> to determine the need for the cane. The only new issues was a new joint complaint, which is based on an old injury. This objection should be sustained.

1.) In Creech v. Ohio Dep't of Rehab. & Corr., 20212 U.S. Dist. Lexis 662215 * 6, the Magistrate Judge averred that the difficulty with Creech's position is that he has presented no evidence of deliberate indifference to his medical needs. He was provided with a cane when he entered custody. Because that is defined as a medical restriction under ODRC Policy, it has been periodically reviewed by medical personnel on a regular basis since Creech was

incarcerated. The restriction was renewed from his admission until Nurse Practitioner Artrip decided, in his medical judgment, that it was not longer warranted as of 2016. So far as the record shows, Creech was able to have that judgment reviewed be prison medical personnel every time he asked between August 2016 and restoration of the restriction in September 2019. No qualified medical personnel inside or outside the prison system has questioned N.P. Artrip's medical judgment.

2.) Objection: Deliberate indifference may be established by showing of "grossly inadequate care as well as by a decision to take an easier but less effecacious course of treatment. Terrance v. Northville Reg'l Phyciatric Hosp., 286 F. 3d 834, 843 (6th cir. 2002)quoting McElligott v. Foley, 182 F. 3d 1248, 1255 (11th Cir. 1999). However, the 11th Circuit cases upon which Terrance was based note that a showing of "grossly inadequate care" satisfies only the objective prong of the "deliberste indifference" standard. Creech must still present evidence of a prison official's subjective awarness of, and disregard for a prisoner's serious medical needs. See Campbell v. Sikes, 169 F. 3d 1353, 1364-65 & n. 9 (11th Cir. 1999).

3.) In the case at bar, it is clear that Creech requested several times that his cane be returned, and he filed a grievance, complaining of pain and that his civil rights had been violated. The sixth circuit has stated that their focus on deliberate indifference, is the pain that a prisoner, who is needlessly allowed to suffer pain when relief is readily available does have a cause of action against those whose deliberate indifference is the

cause of her/his suffering. See Westlake v. Lucas, 537 F. 2d 857, 860 (6th cir. 1976. Therefore, ODRC should not be immune from damages liability by virtue of the Eleventh Amendment. This objection should be sustained.

1.) In Creech v. Ohio Dep't of Rehab. & Corr., 2021 U.S. Dist. Lexis 662125, * 7, the Magistrate Judge averred that: There were many times when plaintiff was unable to get to the library to get copies of law work, and to assist the inmates who were assisting him. He provides no record reference to any evidence on this point. And while there may be some circumstances a constitutional right to the assistance of a "jailhouse lawyer," there is no fourteenth amendment right to be a jailhouse lawyer, i.e. to "assist the inmates who were assisting him.

2.) Objection: Inmates have a well extablished constitutional right to access the courts, "Thaddeus-x v. Blatter, 175 F. 3d 378, 391 (6th Cir. 1999). While an inmate does not generally have an independent right to help other prisoners with their legal claims, Herron v. Harrison, 203 F. 3d 410, 415 (6th Cir. 2000); Thaddeus-x, 175 F. 3d at 395 rather, a jailhouse lawyer's right to assist another prisoner is wholly derivative of that prisoner's right of access to the courts. "Such assistance is protected... when the inmate receiving the assistance would otherwise be unable to pursue lagal redress.

3.) Thus, many inmates help other inmates with programs and activities, medical services, and educational and vocational programs, all of which at least theoretically benefit the prisoner's. Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 210, 118 S. Ct. 1952, 141 L. Ed. 2d 215 (1998). Creech has clearly been diagnosed with "traumatic brain injury," which would

require the assistance of a jailhouse lawyer to litigate his case fairly.

4.) The United States Supreme Court has enunciated in Ex Parte Hall, 312 U.S. 546, 549, 615 Ct. 640, 641, 85 L. Ed. 1034 (1941), that "the State and its Officers may not abridge or impair an inmates right to apply to a federal court for a writ of habeas corpus. "In order that this right be assured to all inmates, the court held that a state could not prevent one inmate from assisting another inmate in the preparation of his writ. Johnson v. Avery, 393 U.S. 483, 488, 89 S. Ct. 747, 21 L. Ed. 2d 718 (1969). The right of reasonable access to the courts-and its corollary right to obtain assistance-extends to imates using 42 U.S.C. § 1983, to remedy denials of constitutional rights during incarceration. Another words, " the right to assist the inmates who were assisting Creech, are conjunctive and are not exclusive fo each other. this objection should be sustained.

## CONCLUSION

Based on the foregoing, the Magistrate Judge's "Supplemantal Report and Recommendations" should be rejected. There are material issues of fact in the case, and Plaintiff is entitled to judgment as a matter of law.

Respectfully Submitted,

*Scott W Creech*
SCOTT D. CREECH, #A588-782

## CERTIFICATE OF SERVICE

A true and accurate copy of the foregoing, Objections has been served upon Defendants, Thomas E. Madden, at 150 East Gay Street, 16th Floor, Columbus, Ohio 43215 on the _____ day of June, 2021 by regular U.S. Mail.

*Scott D Creech*
Scott D. Creech